**Reed S. MacKENZIE, Appellant,**

v.

**Wayne T. BELISLE, Respondent.**

No. C3–82–983.

Supreme Court of Minnesota.

Sept. 9, 1983.

Jay Kelly, St. Paul, for appellant.

Richard Thomas, St. Paul, for respondent.

YETKA, Justice.

This is an appeal from a default judgment and an order denying a motion to vacate that judgment, both in favor of the defendant, Wayne T. Belisle.

Plaintiff, Reed S. MacKenzie, brought an action against Belisle for payment on a promise. After being granted an extension, Belisle mailed his answer and counterclaim to MacKenzie's attorney, Cortland J. Silver, Jr. Silver failed to file a reply to the counterclaim, and a default judgment was entered against MacKenzie for the amount alleged in the counterclaim ($310,000), plus costs ($30), pursuant to Rule 55.01(1), Minnesota Rules of Civil Procedure. Silver moved to vacate the judgment in accordance with Rule 60.02(1), Minnesota Rules of Civil Procedure, but failed to submit an affidavit of merits and verification of reply. The district court denied the motion because Silver failed (1) to comply with the Code of Rules for the District Courts, Part I, Rule 22; and (2) to offer anything in argument that afforded any basis for relief. Silver immediately filed an affidavit of merits and verification of reply and submitted a petition for reconsideration of the motion to vacate. The petition was denied.

MacKenzie now appeals to this court, arguing that Rule 55.01(2) applies, not Rule 55.01(1), thus rendering the default judgment voidable and that, because the requirements of Rule 60.02(1) and/or Rule

60.02(6) have been met, the default judgment should be vacated.

We reverse the entry of default judgment.

MacKenzie brought suit to recover $12,540.50 from Belisle.[1] After being granted an extension, Belisle mailed his answer and counterclaim to Silver's office on March 19, 1982. In the counterclaim, Belisle claimed that MacKenzie was liable to Belisle for $310,000 under a Guaranty of Lease in which MacKenzie had personally guaranteed all rental payments pursuant to an equipment lease.[2]

Silver's office received the answer and counterclaim on March 23, but Silver was in trial in federal district court at Fargo, North Dakota, on that date. Between March 25 and March 31, Silver returned to St. Paul and "commenced work on post-trial matters" in the Fargo case. He then left to look for work in Arizona[3] and returned April 16.

While in Arizona, Silver asked MacKenzie's current counsel, Jay B. Kelly, to open Silver's mail.[4] At that time, Kelly told Silver about the counterclaim. Shortly thereafter, Kelly saw Belisle. Kelly maintains that he told Belisle that a reply to the counterclaim would be filed when Silver got back from Arizona. Kelly concedes he did not specifically ask for an extension of time in which to file the reply, but he assumed that Belisle had acquiesced. Belisle concedes that he saw Kelly on at least three occasions following service of the counterclaim and, on one occasion, Kelly mentioned that Silver was out of town. Belisle, however, maintains the subject of a reply to the counterclaim never came up.

Silver apparently relied on Kelly's version of the conversation. Over a month passed without action by either party after Silver's return from Arizona.

On May 18, 1982, Belisle sought default judgment in accordance with Rule 55.01(1). No notice was given to Silver or MacKenzie. A default judgment was signed by a deputy clerk in the Ramsey County District Court Clerk's office on May 20 and docketed May 24.

On May 25, Kelly discovered that default judgment had been granted. He contacted Silver, who filed a reply[5] and a motion to vacate the default judgment pursuant to Rule 60.02(1). Silver did not (1) include an affidavit of merits in accordance with District Court Code of Rules, Part I, Rule 22; (2) include a verification of the reply; nor (3) offer anything in argument that afforded the district court a basis for relief. The district court denied the motion to vacate.

Silver attempted to rectify his error that afternoon by submitting an affidavit of merits and verification of reply to counterclaim. This attempt was unsuccessful. The court issued its order on July 1, 1982. Silver then filed a petition for reconsidera-

1. MacKenzie is the corporate secretary of a number of companies, all of which are headed by Paul C. Medin as president. Paul and David Medin and MacKenzie were adjudged indebted to a company known as Minnehaha Partnership in a separate action. In the interest of keeping the Medins solvent, Belisle, an attorney and president of the Summit National Bank who had some dealings with the Medins, and MacKenzie each agreed to pay one-half the indebted amount. MacKenzie paid his half, but apparently Belisle refused to honor his promise.

2. The equipment lease was part of a purchase leaseback agreement between Metalers Corp. and Belisle and provided for monthly installments of $5,000 from May 1, 1978, to April 30, 1985. Twenty-two installments were paid. Belisle seeks to recover the remaining 62 installments.

3. Silver maintains that he did not come into the office from March 25, the day he returned from Fargo, until March 31, the day he left for Arizona.

4. Kelly and Silver shared office space. Kelly was MacKenzie's counsel in another action, but was a witness to Belisle's promise to pay one-half of the judgment in the Minnehaha Partnership case, the original cause of action here.

5. MacKenzie's principal defense to the counterclaim is that Belisle has sold the equipment which is the subject of and security for the lease, thus releasing and waiving any liability of guarantor MacKenzie. He also alleges (1) failure to state a claim, (2) res judicata in that Belisle failed to file a claim in Metalers Corp.'s bankruptcy proceeding, thus failing to minimize the risk to guarantors, and (3) laches.

tion of the denial of plaintiff's motion to vacate, which was denied.

MacKenzie, with Kelly now as counsel, appeals. MacKenzie asserts that the district court proceeded under the wrong rule in granting the default judgment without notice to the adverse party. Rule 55.01(1) provides that no notice is required for claims on "a contract for the payment of money only." Rule 55.01(2) requires written notice of the application for judgment to the defaulting party at least 3 days prior to the hearing in "all other cases." Here, it is argued that there was no ascertainable sum certain and Rule 55.01(2) was applicable. MacKenzie also argues that the judgment should be vacated in accordance with Rule 60.02(1) and/or Rule 60.02(6) because (1) Silver's actions were excusable neglect, (2) meritorious defenses to the counterclaim exist, (3) Silver diligently tried to rectify the situation, and (4) Belisle will not be prejudiced by opening up the judgment.

Belisle argues that Rule 55.01(1) applies. Though he does not seriously dispute that Silver diligently tried to save the situation and that no prejudice would be caused by opening the judgment, he argues that Silver's actions constituted inexcusable neglect and that no meritorious defenses exist.

A question of whether appellant's attorneys should pay the costs of this appeal is also raised.

The issues raised on appeal are:

1. Was the exact amount of money owed Belisle ascertainable without trial, thus permitting application of Rule 55.01(1)?

2. Should MacKenzie's motion to vacate the default judgment pursuant to Rule 60.02(1) have been granted?

3. Should appellant's attorneys pay their own costs and forfeit attorney fees?

Because we reverse the entry of the default judgment, we do not reach the issue of whether the judgment should have been vacated pursuant to Rule 60.02(1).

Rules 55.01(1) and 55.02 permit the clerk of the district court to enter judgment against a nonappearing plaintiff without notice to that plaintiff when the defendant's counterclaim against the plaintiff "is upon a contract for the payment of money only."[6] In *Sommers v. Thomas,* 251 Minn. 461, 465, 88 N.W.2d 191, 194 (1958), this court stated that Rule 55.01(1) was applicable when the contract was one in which "the exact amount of money owing to the [non-defaulting party] was ascertainable without any resort to trial."

MacKenzie argues that, because Belisle only attached a copy of the Guaranty of Lease to his counterclaim and that the Guaranty of Lease is "not a contract for the payment of a sum certain of money," the clerk has no way of knowing the exact amount in question.

Belisle's counterclaim specifically alleges that 62 months' rent at $5,000 per month has not been paid. Accordingly, the counterclaim demands judgment in the amount of $310,000, plus 5% interest, costs, and disbursements. The Guaranty of Lease signed by MacKenzie guarantees "prompt payment of all rent" and provides that "Belisle * * * may proceed directly against [MacKenzie] without first proceeding against Metalers [the lessee] or liquidating or otherwise disposing of any security afforded under the Lease. * * * " The lease itself was incorporated by reference in Belisle's counter-

6. Rule 55.01(1) provides:
When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend within the time allowed therefor by these rules or by statute, and that fact is made to appear by affidavit, judgment by default shall be entered against him as follows:
(1) When the plaintiff's claim against a defendant is upon a contract for the payment of money only, or for the payment of taxes and penalties and interest thereon owing to the state, the clerk, upon request of the plaintiff and upon affidavit of the amount due, which may not exceed the amount demanded in the complaint, shall enter judgment for the amount due and costs against the defendant.

Rule 55.02 reads in pertinent part:
The provisions of this rule [Rule 55] apply whether the party entitled to judgment by default is a plaintiff, a third-party plaintiff, or a party who has pleaded a cross-claim or counterclaim.

claim, a practice recognized by Rule 10.03, Minnesota Rules of Civil Procedure.[7]

Entry of the default judgment pursuant to Rule 55.01(1) was improper because Belisle's counterclaim, on its face, is insufficient as a basis for judgment in the amount claimed.

■ Belisle claimed 62 months' rent as "due and owing," but the lease had been in effect for only 48 months, and he had received payments covering 22 months of that period. Thus, only 26 months' rent was past due. The existence of an acceleration clause was not alleged in the counterclaim, and the lease does not provide for automatic acceleration upon lessee's default.[8] Therefore, there was no clear basis in contract for a large portion of the rental payments claimed to be due and owing at the time the counterclaim was filed.

Because there was an insufficient basis to permit determination of the exact amount owed under the lease, entry of a default judgment pursuant to Rule 55.01(1) was in error.

■ The only remaining question is whether appellant's attorneys should pay their own costs. This court has the authority to require Silver and Kelly to forfeit attorney fees and pay the costs of this appeal. *Rice v. Perl,* 320 N.W.2d 407, 411 (Minn.1982); *cf. Hollister v. Ulvi,* 199 Minn. 269, 277, 271 N.W. 493, 497 (1937) (court has duty to control attorneys to prevent injustice to clients); *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980). This court has expressed reservations about holding attorneys answerable for their every mistake or error, particularly when the attorney acts honestly, in good faith, to the best of his skill and knowledge, and with ordinary care. *Sjobeck v. Leach,* 213 Minn. 360, 6 N.W.2d 819 (1942), *Glenna v. Sullivan,* 310 Minn. 162, 245 N.W.2d 869 (1976). In this case, however, Silver and Kelly were negligent. Their error may have been in good faith and based on their "misunderstanding" of Belisle's position on the extension, but the fact remains that this appeal would not have been necessary had they been more careful.

Accordingly, we order Silver and Kelly to forfeit their attorney fees and share the costs of this appeal.

Reversed and remanded.

---

**7.** Rule 10.03 provides: "Statements in a pleading may be adopted by reference in a different part of the same pleading or in another pleading or in any motion. A copy of any written instrument which is an exhibit to a pleading is a part of the statement of claim or defense set forth in the pleading."

**8.** The lease provides, "Reasonable damages may include any or all of the following: (i) unpaid rentals and residual value of the equipment, (ii) loss of rental income and (iii) any deficiency measured by the total of the unpaid rentals and residual value of the equipment less the amount, if any, realized by the Lessor upon disposition of the equipment." Until a trial court has determined which of these items is includable as "reasonable damages," the amount due to Belisle is uncertain. Construction of this damages clause is a matter for the trial judge, and is not to be entrusted to other court personnel.